IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.:

DONALD SCHULTZ

    Plaintiffs,

v.

PALMA SOLA HARBOUR CONDOMINIUM, INC.,
MATTHEW EDWARDS, and BEN TUDOR

    Defendant,

_____/

# COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff, DONALD SCHULTZ, by and through their undersigned counsel, sues Defendant, PALMA SOLA HARBOUR CONDOMINIUM, INC., MATTHEW EDWARDS and BEN TUDOR and in support thereof states as follows:

1. The Court has original jurisdiction pursuant to 11 U.S.C. §1331, 42 U.S.C. § 3613, because this lawsuit is brought under the Fair Housing Act, 42 U.S.C. § 3601 et seq., and supplemental jurisdiction under 28 U.S.C. § 1291, over Plaintiffs claims under the Florida Fair Housing Act, § 760.20, et seq.

2. Venue is proper in the Middle District of Florida, Tampa Division, under 28 U.S.C. § 1391(b) because the claim arose in this judicial district.

3. Plaintiff, DONALD SCHULTZ is a resident of the State of Florida, associated with a person with a disability, and is otherwise *sui juris*.

4. Plaintiff, DONALD SCHULTZ currently owns and lives in a unit within PALMA SOLA HARBOUR CONDOMINIUM, INC., located at 9613 Valencia Cove, Bradenton, Florida.

5. Defendant, PALMA SOLA HARBOUR CONDOMINIUM, INC., (hereinafter "PALMA SOLA" or "Association"), is a Florida non-profit corporation, licensed to and doing business in Manatee County, Florida, and operates a condominium association located at 9410 Catalina Dr. Bradenton, FL 34210.

6. Defendant, BEN TUDOR, at all times material was and is the President of PALMA SOLA and resides in Manatee County and is otherwise *sui juris*.

7. PALMA SOLA is operated by a Board of Directors, including Defendant, President BEN TUDOR. BEN TUDOR was personally involved in each and every discriminatory act mentioned infra during his tenure as President of the Board of Directors. As such, each reference to PALMA SOLA includes Defendant, BEN TUDOR.

8. Defendant, MATTHEW EDWARDS, at all times material was a Florida Licensed Community Association Manager, and an authorized agent for

Defendant, PALMA SOLA, personally derived and implemented the discriminatory and retaliatory scheme of Defendants and is *sui juris*.

## GENERAL ALLEGATIONS

9. Plaintiff, DONALD SCHULTZ (SCHULTZ) is a resident of Palma Sola who has an above the knee amputation on left leg, and injury to right leg. He uses a wheelchair and other mobility devices and can stand and ambulate with assistance and difficulty. This disability is obvious and substantially affects the daily life activities of walking, standing, caring for oneself, performing manual tasks, and working.

10. SCHULTZ uses a wheelchair for mobility and the defendants have always been aware of his disability and his use of a wheelchair. He has a handicap license plate and a placard on his car.

11. In order to assist with the limitations of his disability, SCHULTZ wanted to obtain a service animal to assist him with balance when he attempts to walk with crutches and prothesis, as well as to assist with bending, picking himself up and retrieving items.

12. SCHULTZ had been through a long and tortuous journey to obtain a professionally trained service animal.

13. In Aug 2019, SCHULTZ found Home Sweet Home Service and Therapy Dog Training. They discussed cost and the Dog Training entity gave

SCHULTZ a first responder a discount so he would only need to pay $10,000. In September 2009, SCHULTZ discovered that he was a victim of a fraud scheme. SCHULTZ arrived in Florida in Sept 2019, only to find out that he was a victim of fraud, and the alleged trainer stole his money. In October 2019, and SCHULTZ obtained a sweet dog, Astra, but the dog was sick, untrained, and was never let out of his crate.

14. SCHULTZ went on the local news and as a result, Canine Champions for Veterans came forward and trained a Labrador Retriever, named Ryder, to assist SCHULTZ with his disability related needs.

15. In November 2020, Ryder's training was complete, and he was delivered to SCHULTZ. Ryder was specially trained by professional trainers to be off leash, and to retrieve items, assist with balance and support, and other tasks of daily living. Ryder was trained to assist off lease because the leash can be caught in many different spots, tangled, and have the potential to pull SCHULTZ out of his wheelchair or injure him when his service animal is accomplishing his tasks.

16. Throughout this process, and due to the publicity, it garnered, the association was well aware that SCHULTZ was getting a service dog and had another dog prior to Astra and Ryder.

17. When Ryder was delivered in November, the professional trainers stayed for the whole weekend to train SCHULTZ with Ryder, at which time, the

trainer met the property manager Defendant, MATTHEW EDWARDS to discuss about Ryder's tasks and training.

18.  In November 2020 and December 2020, Ryder was used throughout the property without a leash, and when SCHULTZ would walk Astra and his other dog, both would be leashed. No one inquired about Ryder, and he was permitted to have full and equal enjoyment of all common areas.

19.  On January 3, 2021, Association president, Defendant, BEN TUDOR approached SCHULTZ and advised him that people were complaining that the dog is off the leash. TUDOR agreed with SCHULTZ that as a service dog, Ryder did not need to be leashed.

20.  TUDOR stated to SCHULTZ that that this was a "bunch of baloney", and he did not know why the board was complaining about Ryder.

21.  TUDOR stated to SCHULTZ that TUDOR called Southeast Guide Dogs training facility and spoke with the ADA coordinator who advised him that the only thing that the dog needs to be is under control.

22.  TUDOR stated to SCHULTZ that he called Disability Rights Florida, and they told him that the only thing that the dog needs to be is under control.

23.  TUDOR had communicated his findings to the other members of the Board of Directors of the Association and MATTHEW EDWARDS and advised that Mr. Schultz should keep doing what he is doing.

24. TUDOR advised SCHULTZ that he was going to speak to Betsy Bordeaux, who runs the Community Association Manager (CAM) program in Tallahassee, and she was going to call SCHULTZ.

25. On January 13, 2021, SCHULTZ received a call from Betsy Bordeaux, she advised that the rules are in effect, and he was required to follow the rules, and he should be a good neighbor and take the dog out of the complex to walk him. She accused SCHULTZ of "acting like a school aged kid."

26. On January 15, 2021, MATTHEW EDWARDS came to SCHULTZ's home and advised them that Ryder is required to be on a leash, and he could be fined by the association if he was not.

27. On January 21, 2021, SCHULTZ replied to TUDOR and the other members of the Board of PALMA SOLA advising them that he understood their concerns regarding Ryder being off leash in the community, as well as the Rules and Regulations regarding dogs. However, because Ryder was a service dog Mr. Schultz was asking for the association, to provide him an exception and reasonable accommodation because of his service dog status.

28. On February 12, 2021, Defendant EDWARDS, on behalf of PALMA SOLA, demanded written documentation with medical evidence demonstrating the need for his requested accommodation. The accommodation and medical need of such accommodation was clearly obvious by SCHULTZ's obvious disability.

29. On February 22, 2021, Defendant EDWARDS, on behalf of PALMA SOLA, demanded again demanded that SCHULTZ keep Ryder on a leash and to responded with medical documentation of his need for an accommodation.

30. On February 25, 2021, SCHULTZ retained counsel who advised EDWARDS of the applicable law with regards to a service animal, citations to the HUD guidance, **and a letter from the trainer regarding the tasks that the service animal provides off-leash that assists SCHULTZ with his disability-related needs.**

31. Notwithstanding actual knowledge of the Fair Housing laws, and penalties for violating such laws, on February 26, 2021, Defendants responded to the letter of February 25th and reiterated the Association's demand for further medical information regarding the service animal.

32. The association was not satisfied with the description of the individualized training of Ryder that would assist SCHULTZ with his disability-related needs, but instead demanded a determination of medical necessity from a doctor related to the animal's training.

33. In response to the letter asserting SCHULTZ's rights under the Fair Housing Act, the Association, through MATTHEWS asserted a new penalty for SCHULTZ. The ASSOCIATION was going to cite SCHULTZ for having more

than two household "pets", and for his failure to provide a "formal written request" to have a service animal or to exceed the two-pet rule.

34. Furthermore, in response to the letter asserting SCHULTZ's fair housing rights, the Association commenced the violation process from the rules and bylaws of the Association and stated that SCHULTZ was not in compliance with the rules and regulations that governs Palma Sola Harbor Condominium, Inc, and the Board of Director's intention to impose a fine for the violation of the leash law. The fine was $100 a day, up to $1,000 for a continuing violation.

35. As a result of this retaliatory response to the explanation of the applicable law and further invasive inquiries, which was tantamount to denial of SCHULTZ's request for accommodation, SCHULTZ filed a complaint of housing discrimination and retaliation with the Florida Commission on Human Relations and the U.S. Department of Housing and Urban Development.

36. SCHULTZ received a letter to EDWARDS from their condominium attorney who decided to do some research into the Fair Housing Act and opined that waving the "leash law" for an amputee is not a reasonable accommodation – because the attorney "cannot think of anything that a dog can do for an amputee without the leash that the dog could not do with the leash."

37. On March 8, 2021, SCHULTZ received a Notice of Hearing in front of the Association's Grievance Committee with regards to the off-leash violations,

and such notice required SCHULTZ to present statements or other evidence as to why the fine assessed should not be imposed.

38. On March 18, 2021, counsel for SCHULTZ demanded the right to appear and that any such hearing was again in retaliation for his rights under the Fair Housing Act. Defendants claimed that the violation was only regarding the leash rules, and not about the service dog or SCHULTZ's disability.

39. On March 19, 2021, SCHUTLZ received correspondence from the Association's attorney demanding that SCHULTZ keep "all of his dogs on a leash when they are outside of his unit" and again demanded more documentation to review specifically why the dog was required to be off-leash and approve by the association before any accommodation is provided. If he did not provide specific details from a doctor regarding the training of his animal, then the association was going to file a petition for arbitration.

40. On the same day, SCHULTZ' attorney advised the association's attorney regarding Mr. Schultz's representation, and prior correspondence with the association as well as the retaliatory nature of the continuing conduct by the association. After receipt of the letter, the Associations attorney postponed the violation hearing.

41. On March 22, 2021, Counsel for both parties discussed the situation and Counsel for Schultz again attempted to bring the Association's attorney up to

speed on the requirements of the Fair Housing Act and the guidance on assistance animals, and how assistance animals are not "pets" that would be subject to "pet" rules in the association documents.

42.  On April 1, 2021, the Association attorney sent correspondence to SCHULTZ attorney claiming that a formal accommodation request was required, and again questioned whether it is required to have SCHULTZ's dog off leash in order to comply with the "pet rules".

43.  On April 2, 2021, SCHULTZ's attorney again responded to the attorney for the Association with appropriate citations to the requirements of "formal requests for accommodations" under the Fair Housing Act, and the definition of "necessity" under the Fair Housing Act.

44.  In light of all of this information regarding SCHULTZ's rights, on April 6, 2021, the association's attorney again reiterated their position, and stated "I have recommended that the association schedule a Board meeting to decide whether to grant what I assume is Mr. Schultz' request for a reasonable accommodation allowing Mr. Schultz to have 3 dogs and allowing one of the dogs to be "off leash".

45.  On April 12, 2012, the Association's attorney sent SCHULTZ's attorney and offered that Mr. Schultz could keep three dogs if he keeps Ryder on a leash in the common elements of the association and would be "willing to

consider" allowing Ryder to be off leash when he is performing tasks that require him to be off leash.

46.   PALMA SOLA thereafter voted 6-0 to deny SCHULTZ his accommodation of allowing his service animal to be off leash while the dog was on duty.

47.   On April 26, 2021, PALMA SOLA, through their counsel made a demand for Schultz to remove one of his dogs from the unit within 30 days or the association was going to file an arbitration petition.

48.   BEN TUDOR and MATTHEW EDWARDS met with several homeowners separately to advise the other members of the association that due to SCHULTZ's actions, he was costing the other 181 homeowners of the Association money. Furthermore, they were advised that there may be a special assessment all because of SCHULTZ

49.   Defendants advised the homeowners that the Association has the right to decide whether the work or task that can be performed by the dog on the leash.

50.   As a result of the discussion several homeowners accosted SCHULTZ and his partner.

51.   In May 2021, MATTHEW EDWARDS installed surveillance cameras to take photographs and videos of SCHULTZ and his dogs.

52. On May 13, 2021, Defendants reset the Grievance Committee hearing to discuss SCHULTZ's violations. The agenda was Mr. Schultz's two violations, "dog off leash and more than two pets in the unit."

53. On May 14th, the Defendants were advised the Mr. Schultz will not appear at the hearing as "he should not be required to respond to questions or allegations regarding the nature or extent of his disability that he uses his service animal to address. Especially so in an adversarial proceeding. This procedure is humiliating to him, and he should not need to explain his disability related needs to his neighbors."

54. In response, Defendants advised that "the Board proposes to levy a fine against Mr. Schultz for having more than 2 dogs in his unit."

55. Because the other attempts at explaining retaliation and discrimination were ineffectual, counsel for SCHULTZ sent an email and a pictograph flowchart for the Defendants to understand both housing discrimination and retaliation. Such letter and charts are attached hereto as Exhibit "A".

56. For the next six months, the Defendants would update the Association members of their position in this dispute, and how SCHULTZ is costing them money

57. Notwithstanding the actual knowledge of both discrimination and retaliation in picto-graphic form, on September 2, 2021, the Association was again

planning a Grievance Committee hearing to discuss SCHULTZ's two alleged violations, "dog off leash and more than two pets in the unit."

58. Defendants and EDWARDS enforces this rule regarding assistance animals throughout the property and had advised another assistance animal that she could not have her animal, and that "a service animal is still a Household pet and that the two-pet limit will apply."

59. Defendants and EDWARDS continue to request substantial medical documentation from medical providers relating to the nature and extent of a disability.

60. Defendants and EDWARDS continue to represent to homeowners that SCHULTZ is breaking the rules of the association and costing them money, which has caused him to become a pariah in his community.

61. It is unlawful to deny equal opportunity to use and enjoy a dwelling, including public and common use spaces., or any of the privileges or amenities of a public accommodation because of a person's use of a service animal.

62. Further, as a direct and proximate result of Defendant's refusal to accommodate SCHULTZ, SCHULTZ has suffered irreparable loss and injury including, but not limited to humiliation, emotional distress, and deprivation of their right to equal use and enjoyment of his home.

63. Plaintiffs has retained the undersigned counsel to represent him in this cause and have agreed to pay them a reasonable fee for their services.

## COUNT I –FAILURE TO REASONABLY ACCOMMODATE

64. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 63 above as though fully set forth herein.

65. The Defendants PALMA SOLA HARBOUR CONDOMINIUM, INC., MATTHEW EDWARDS and BEN TUDOR. were personally involved, and/or had authorized or ratified each and every discriminatory act and denial of accommodation for SCHULTZ herein.

66. The Defendants had actual knowledge of SCHULTZ's disability and regarded him as a person with a disability.

67. SCHULTZ had requested a reasonable accommodation to permit him the use of a service animal at PALMA SOLA.

68. SCHULTZ's dog (Ryder) was individually trained to ameliorate the difficulties posed by her disability obtain a service animal to assist him with balance when he attempts to walk with crutches and prothesis, as well as to assist with bending, picking himself up and retrieving items

69. Ryder was trained to work for SCHULTZ off leash because of his disability.

70. At all times, Ryder was specifically and effectively trained to

SCHULTZ's voice and/or signal to maintain control of the animal

71. Plaintiff's disability was obvious, and Plaintiff advised Defendants of his of the service dog to ameliorate difficulties related to his disability.

72. At no time was Ryder a direct threat to the health and safety of others or caused any property damage to the Defendants herein.

73. Such accommodation would not be an undue financial or administrative burden to PALMA SOLA, or any of its members, officers, directors, agents, or employees.

74. At no time did Defendants retain any medical professional, physical or occupational therapist, or service animal trainer who opined that the service animal does not ameliorate the difficulties that SCHULTZ has due to his disabilities, or that the animal would be a direct threat to others.

75. Such service animal was necessary to the equal use and enjoyment of SCHULTZ home and her use and enjoyment of common and public areas of housing.

76. To this date, the decision has been denied, or such decision to approve Ryder has been delayed, and such undue delay constitutes a denial.

77. Defendants' failure to modify its existing policies to accommodate the disabilities of the Plaintiff is discriminatory and unlawful.

78. Defendants' enactment and enforcement of policies which permit an

invasive and unnecessary examination into a person's disability and medical history is discriminatory and unlawful.

79. Such actions by Defendants were in total and reckless disregard of SCHULTZ's rights and indifferent to the medical conditions or needs of SCHULTZ.

80. Further, as a direct and proximate result of Defendants' refusal to accommodate SCHULTZ and continued inquiry into his disability, SCHULTZ has suffered irreparable loss and injury but not limited to humiliation, emotional distress, and deprivation of his right to equal housing opportunities regardless of disability.

WHEREFORE, Plaintiffs DONALD SCHULTZ, demands judgment against the Defendants PALMA SOLA HARBOUR CONDOMINIUM, INC, MATTHEW EDWARDS and BEN TUDOR to declare that the actions of the Defendants violated the Fair Housing Amendments Act, by discriminating against persons with disabilities and award Plaintiff compensatory and punitive damages, and their attorneys' fees and costs as well as injunctive relief as follows:

a. That the Court declare that the actions of the Defendants violated the Fair Housing Amendments Act by discriminating persons with disabilities.

b. That the Court enjoin Defendants from discriminating against Plaintiff or any other person, because of because of his disability or need for a assistance animal;

c. That the Defendants allow SCHULTZ, to be able to reside in his home with his service animal, and allow him equal use and enjoyment of his home, including the public and common areas.

d. That the Court order Defendants to provide a notice to all owners and tenants of PALMA SOLA their rights under the Fair Housing Act, including their right to have accommodations or an assistance animal because of their disability;

e. That the Court order that PALMA SOLA to instruct all of its employees, agents, independent contractors and/or other persons who deal with the rental or management of any and all housing currently managed and/or controlled by PALMA SOLA, of the terms of the Court's Order and the Fair Housing Act, Fair Housing Act and implementing regulations;

f. That the Court order that PALMA SOLA maintain for inspection by Plaintiff and all other tenants or owners at its condominium offices, copies of the Fair Housing Act, Fair Housing Amendments Act and implementing regulations;

g. And grant any other such relief as this Court deems just and equitable.

## COUNT II- RETALIATION IN VIOLATION OF 42 U.S.C. § 3617

81.   Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 63 above as though fully set forth herein.

82.   The TUDOR and EDWARDS were personally involved, and/or had authorized or ratified each and every discriminatory act and retaliatory act against SCHULTZ herein. Furthermore, Defendant PALMA SOLA HARBOUR CONDOMINIUM, INC, is vicariously liable for the acts or omissions of its agents and employees who retaliated against SCHULTZ for the exercise of his rights.

83.   Shortly after SCHULTZ asked for a reasonable accommodation pursuant to the Fair Housing Act, the Defendants began retaliating against him.

84.   The Defendants cited SCHULTZ for not having Ryder on a leash, notwithstanding the duties and training of the service animal, and threatened to charge him $100 for each day for a maximum of $1000.

85.   The Defendants cited SCHULTZ for having three "pets" notwithstanding being advised by Plaintiff and the clear text of the HUD guidance that a service animal is not a "pet" and threatened to charge him $100 for each day for a maximum of $1000.

86.   On three occasions, the Defendants demanded that SCHULTZ appear and defend his use of his service animal with regards to the violations in front of the association.

87. The Defendants have continually disparaged SCHULTZ in their publications and verbally and accused SCHULTZ of rule breaking and as the cause of their spending additional funds, and the possibility of an assessment.

88. Section 3617 of the Fair Housing Act makes it unlawful to: "coerce, intimidate, threaten, or interfere with any person ... on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section ... 3604 of this title."

89. Section 3617 has been broadly applied to reach *all practices* which have the effect of interfering with the exercise of rights under the federal fair housing laws."

WHEREFORE, Plaintiffs DONALD SCHULTZ, demands judgment against the Defendants PALMA SOLA HARBOUR CONDOMINIUM, INC, MATTHEW EDWARDS and BEN TUDOR to declare that the actions of the Defendants were in retaliation for the exercise of SCHULTZ's rights under the Fair Housing Act, and award Plaintiff compensatory and punitive damages, and their attorneys' fees and costs as well as injunctive relief as follows:

a. That the Court declare that the actions of the Defendants were in retaliation for the exercise of SCHULTZ's rights under the Fair Housing Amendments Act;

b. That the Court order Defendants to publish to all owners and residents of PALMA SOLA their rights to an assistance animal and a reasonable accommodation under the Fair Housing Act;

c. That the Court order that PALMA SOLA to publish that SCHULTZ was legally entitled to have a service animal and all additional costs were solely due to the actions or inactions of Defendants herein.

d. And grant any other such relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all issues so triable.

Respectfully submitted this January 7, 2022.

By: */s/ Matthew W. Dietz*
MATTHEW W. DIETZ, ESQ.
Florida Bar No.: 0084905
Disability Independence Group, Inc.
2990 Southwest 35th Avenue
Miami, Florida 33133
Tel: (305) 669-2822
Fax: (305) 442-4181
Mdietz@justDIGit.org
aa@justdigit.org

*Counsel for Plaintiff*